## Mary Edna HUBBARD *v.* Cecil HUBBARD

5-5653                                   472 S.W. 2d 937

Opinion delivered November 22, 1971

*Frank W. Booth,* for appellant.

*Shaw & Ledbetter,* for appellee.

Conley Byrd, Justice. Appellant Mary Edna Hubbard, a tenant by the entirety of a 17.5 acre tract, brought this quiet title action against the other tenant, appellee Cecil Hubbard, contending that she had acquired his interest by adverse possession. The trial court found for appellee and she appeals.

The parties were married in 1929, and lived together until sometime in 1952. In 1945 they acquired the property here in question. No division of the property was made in the 1954 divorce obtained by appellee.

Appellant testified that in 1954, after the divorce, she

visited appellee in his hotel and told him something had to be done about the property. At that time there was an outstanding mortgage of $335 and the property had been sold to the State for nonpayment of the taxes. She says that appellee refused to do anything about the property and told her that he was through with her and everything out there. Following that conversation she redeemed the property from the tax sale, paid the mortgage and had the property assessed in her name. Since that time she has paid the taxes each year. From time to time she has improved the property by installing city water, a new gas pipe, hot water heater, bath tub, etc., at a cost of $1081. Admittedly she was living on the property with their son, daughter and grandchild at the time of the divorce. She lived there until she married a man named Smith in 1957 and moved to St. Louis. She moved back to the place in February 1961. From the divorce until the present time some one or all of the parties' children have lived on the property. She refused to join with appellee in the execution of an oil and gas lease. On cross examination she described the property as the family's home place.

Appellee testified that at the time of the divorce they had children living at home, the youngest being 16. He also considered it the family home place. After the divorce he couldn't live with appellant and had to get out and find himself a place to live. During the time appellant lived in Missouri with her Smith husband, the children were living on the place and appellee made arrangements with them to pay the taxes. Other than one trip there to attend a son's funeral, admittedly appellee has had no physical connection with the property. He did execute an oil and gas lease. Appellee testified the mortgage was $82.00 at the time of the divorce. He paid $42.00 and appellant paid the other $40.00.

Since this property was purchased, as an estate by the entirety, before passage of Act 340 of 1947 (which for the first time gave courts of equity the power to dissolve estates by the entirety upon rendition of a divorce), the court in the 1954 divorce could not have dissolved the estate by the entirety and created a tenancy in

common, even if either party had sought a division of property in that proceeding. Prior to Act 340 of 1947, both divorced parties continued as tenants by the entirety, with the right of the whole of the estate in the survivor. *Jenkins* v. *Jenkins,* 219 Ark. 219, 242 S. W. 2d 124 (1951). The record here shows that at the time of the divorce appellant was living in the home with one of the parties' minor children. Under these circumstances the courts would ordinarily have awarded possession of the property to the wife, had the issue been presented. Thus appellee did what the courts would have required him to do by getting out and finding himself a place to live. This of course accounts for the court's suggestion that appellee was in effect driven from the property.

Of course the redemption deed from the State added nothing to appellant's title. See *Spikes* v. *Beloate,* 206 Ark. 344, 175 S. W. 2d 579 (1943), and *Hollaway* v. *Berenzen,* 208 Ark. 849, 188 S. W. 2d 298 (1945).

On the issue of abandonment appellant testified that appellee said he was through with the property. On the other hand the appellee testified to looking after the property through the children from 1957 to '61. Since title to property is not ordinarily lost by abandonment, *Baxter* v. *Young,* 229 Ark. 1035, 320 S. W. 2d 640 (1959), in the absence of estoppel and limitations, the trial court properly found this issue in favor of appellee.

On the adverse possession issue, appellant relies strongly upon *Ueltzen* v. *Roe,* 242 Ark. 17, 411 S. W. 2d 894 (1967). In the *Roe* case the parties were only tenants in common. A partition of the property could have been obtained at any time. Here, however, there was involved a tenancy by the entirety that could not be dissolved by court action. See *Jenkins* v. *Jenkins, supra,* and Ark. Stat. Ann. Sec. 34-1801 (Supp. 1969). Furthermore, the testimony shows that appellant, in her possession of the property, possessed it at all times as the family home place together with some or all of the parties' children. Under the laws applicable to estates by the entirety, appellant had a right to use and enjoy the property. The

468

evidence as to her use and possession does not show that she did anything that would have been notice to appellee that the property was being used for anything other than the family home place. Under the law in this State the possession of some of the joint tenants is presumed to be the possession of all joint tenants and continues to be such until there is some act of ouster sufficient in itself to give notice that those in possession are openly and notoriously claiming in hostility to and not in conformity with the rights of others having interests in the property, *Elrod* v. *Elrod,* 192 Ark. 458, 92 S. W. 2d 211 (1936). On this issue appellant's proof is deficient. It follows that the trial court properly dismissed the complaint.

Affirmed.