Vicky L. FITZGERALD *v.* Scott R. FITZGERALD

CA 98-757                                              976 S.W.2d 956

Court of Appeals of Arkansas
Division III
Opinion delivered October 28, 1998

*Jack W. Barker*, for appellant.

*Henry C. Kinslow*, for appellee.

MARGARET MEADS, Judge. This is an appeal from the provision of a decree of divorce which granted appellee, Scott Fitzgerald, custody of the parties' son, Christopher, born April 27, 1995.

The parties were married on September 5, 1992. On May 19, 1997, appellee filed a complaint for divorce alleging personal indignities. The complaint stated that the "parties shall share joint custody of the minor child with actual physical custody being with the [appellee]." Appellant filed a counterclaim for divorce alleging personal indignities and seeking custody of the two-year-old minor child.

On June 13, 1997, the trial court entered a temporary order granting the parties joint custody of the child with appellee being

granted actual physical custody. On January 5, 1998, appellant filed a motion to establish specific visitation, and on January 15, 1998, the chancellor entered an order awarding every-other-weekend visitation to appellant. In a decree entered March 26, 1998, appellee was granted a divorce and awarded custody of the parties' minor child.

At the hearing on the divorce complaint, appellee testified that he wanted custody of Christopher because he believed he had a more stable life than appellant. He said he had been taking care of Christopher since he was three months old when appellant, an intensive care nurse who worked nights, returned to work after maternity leave. Appellee testified that appellant had worked from 7 p.m. to 7 a.m., and prior to Christopher's birth, he worked evenings and the graveyard shift seven days a week. The parties agreed that he would change jobs in order to be there for the child. After Christopher was born, appellant took Christopher to day care if she had to work again that night. Appellee said that up until two or three weeks ago, when appellant started a new job, there were only one or two days a week that she could spend longer than thirty minutes with the child. The only problem appellee had with appellant, other than not spending as much time with Christopher as he had, is that appellant had no mothering experience prior to Christopher's birth, whereas he helped raise three sisters and a brother, and he has taken care of two nieces and a nephew.

Appellee testified further that he works from approximately 7 a.m. until 4 p.m. daily. He leaves Christopher at day care on his way to work, gets off work between 4 and 4:30 p.m., goes to the fitness center where he spends thirty to forty-five minutes, picks up Christopher between 5 and 5:30 p.m., and then goes bowling three nights a week, taking Christopher with him. Christopher eats at the bowling alley, and appellee's sister, brother-in-law, and some friends watch Christopher while appellee is bowling. Appellee leaves the bowling alley between 9 and 9:30 p.m. Appellee testified that he does not believe it is detrimental to Christopher, who is only 3, to be in a bowling alley until 9:30 p.m., and that he sees no problem with Christopher getting

home and in bed at 10 or 10:30 p.m. if he does not have to go to school the next day.

Appellant testified that she formerly worked from 7 p.m. to 7 a.m. at the Medical Center of South Arkansas. She has now secured a permanent day job in order to spend more time with Christopher and works from 7 a.m. to 5 p.m. four days a week and every other weekend. In regard to working nights, appellant testified that when you get off work at 7 a.m. you must sleep, it is hard to keep up with a two-year-old child when you have had no sleep, and it is not fair to the child. She said that Christopher could play with other children when he was in day care, she could rest, and she would then go and get him. She testified that when she did not work shifts, she got groceries and paid bills. Sometimes she left Christopher at day care so he could play with the other children, and she could get things done.

Appellant disputed appellee's contention that he had been Christopher's primary caretaker, and said that her mother was Christopher's primary caretaker until he was almost two years old. She testified that her mother had Christopher during the day when appellee was at work, and if appellant was not working in the evenings she cared for him. When the parties were living together, appellee would get home at 4:30 or 5 p.m., she would be trying to get ready for work and fix supper, but appellee would leave to go "work out" despite her request that he stay home and help. She testified further that appellee wanted her to take Christopher to day care and let him play like the other children, that she did it at his suggestion, and that he is now condemning her for doing what he told her to do. She said Christopher belongs with her, and that she had initially agreed to joint custody because of her work schedule, but she now has a day job.

Appellant's mother, Barbara Speers, testified that after appellant returned to work following Christopher's birth, she would get off work, make formula, stay up with him all day except for an hour when he slept, and then go back to work that evening. Appellant was fatigued, and therefore Ms. Speers began keeping Christopher when appellant got off work in the morning so appellant could sleep. Appellee would get off work about

4:30 p.m., but he would not pick up Christopher until 7:30 or 8 p.m. Ms. Speers finally got tired of his coming so late and told him that he would have to stop going to MoJoe's Fitness Center to "work out" and come get his child.

Lori Russell, a friend of appellant, testified that since January 1998, she has seen Christopher at the bowling alley three to five nights a week running free and unattended. Debbie Smith, another friend of appellant, testified that she has seen Christopher at the bowling alley quite often. She has seen him get under the chairs where people sit. She has also seen him lie down, suck his thumb, and go to sleep on the floor in front of the desk where everyone pays.

In a letter opinion dated March 24, 1998, the chancellor wrote that a temporary hearing was held on January 13, 1998, wherein temporary custody of the child was awarded to appellee primarily due to appellant's work schedule, which required her to work from 7 p.m. to 7 a.m. The chancellor noted that appellant now works days. The chancellor held that both parties appear able to provide for the child's care, but until just recently appellant's work hours hampered her spending time with the child. The chancellor found that "most of the life of this child he has been mainly cared for by [appellee]." The chancellor also held that there was not sufficient evidence to justify a change of custody, and therefore custody should be awarded to appellee.

Appellant's first point on appeal is that the chancellor's finding that appellee had been the child's primary caretaker for most of the child's life is clearly against the preponderance of the evidence. She says that the evidence established that when she returned to work after maternity leave, her mother kept the child during the day, and appellee would not help take care of the child in the evenings. Appellant also says the evidence indicated that appellee preferred to "work out" when he got off work rather than pick up his child, and that now the child is at the bowling alley several evenings per week apparently fending for himself. Appellant says that Christopher is either at a day care center or at the bowling alley. Appellant also argues under this point that the

chancellor's award of custody is contrary to Christopher's best interest.

■ We agree that the chancellor erred in finding that for most of Christopher's life he had been mainly cared for by appellee. The evidence established that appellant cared for the child, who was not yet three years of age at the time of the hearing, during her maternity leave; after that time, Ms. Speers cared for him when appellant got off her shift until approximately 8:00 p.m. This continued until Christopher was two years old, when Ms. Speers got tired and told appellee he would have to stop going to "work out" after work and come get his child instead. There is also evidence that appellant took care of Christopher in the evenings when she was not working.

Appellant's second point on appeal is that the chancellor erred in finding that appellant had not shown sufficient evidence to justify a change of custody. Under this point, appellant argues that obtaining a day job constituted a material change in circumstances, and the chancellor erred by not giving proper consideration to her change in working hours. She also argues that the chancellor erred by not determining custody with the primary consideration being based upon the child's best interest. She says the chancellor's order is merely an affirmation of his temporary order.

■ ■ In his letter opinion, the chancellor stated that "there is not sufficient evidence here to justify a change of custody and, therefore, custody should be awarded to [appellee]." In *Carter v. Carter*, 19 Ark. App. 242, 246-47, 719 S.W.2d 704, 705-06 (1986), this court stated:

> While the primary consideration in a change of custody suit is the welfare and best interest of the child, an order changing custody cannot be made without proof showing a change in circumstances from those existing at the time the original order was made. If there is no showing of a material change of facts, there must be a showing of facts affecting the child's best interest that were not presented to or known by the court at the time the original custody order was entered. This is because the original decree constitutes a final adjudication that the appellant, not the appellee, was the proper party to have the child, and before an

order can be made changing the status, there must be proof justifying a change of custody.

In this regard, we simply note that because there had been no prior final decree or final adjudication of custody, the chancellor erred in requiring sufficient evidence to justify a change of custody.

■ The chancellor also failed to make a custody determination based on the child's best interests. There is no finding of what is in the child's best interests in the letter opinion, the order, or the chancellor's comments from the bench. The primary consideration in awarding custody of children is the welfare and best interests of the children involved; all other considerations are secondary. *Scherm v. Scherm*, 12 Ark. App. 207, 671 S.W.2d 224 (1984).

■ The order of the chancellor as it pertains to child custody is reversed, and the matter is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

ROBBINS, C.J., and STROUD, J., agree.