Rebecca B. GUEST *v.* Gerry S. SAN PEDRO

CA 99-1001                                          19 S.W.3d 62

Court of Appeals of Arkansas
Division I
Opinion delivered June 7, 2000

*David R. Hogue*, for appellant.

*Gregory E. Bryant*, for appellee.

JOHN F. STROUD, JR. Judge. Rebecca B. Guest appeals a March 31, 1999, order of the Pulaski County Chancery Court that modified the child-support obligation of appellee, Gerry S. San Pedro, and granted him specific visitation. An order of September 26, 1995, reveals that the parties had agreed to entry of the following: appellee admitted paternity of a male child born to appellant on May 17, 1995; appellant was awarded custody, subject to reasonable visitation by appellee; appellee was to pay monthly child support of $737.50; and appellee, by April 15 of each year, was to furnish appellant proof of his income for the preceding year. The March 1999 order was issued after a hearing on a motion by appellant for increased child support and a motion by appellee for specific visitation. Appellant's motion was based in part upon the changed circumstance that appellee was earning more money than at the time of the initial agreement.

Although granting an increase in child support, the chancery court deviated downward from the amount set forth by Administrative Order No. 10—Arkansas Child Support Guidelines upon finding that appellee had overcome the rebuttable presumption and that the chart amount in the guidelines was inappropriate under the facts of this case. The court set appellee's monthly child-support obligation at $970.75, granted appellee eight weeks of summer visitation, abated child support during the eight weeks, and pro-rated ten months of child support over a twelve-month period. Appellant raises two points on appeal: that the court's decision fails to comply with Section I of Administrative Order No. 10, and that it violates Section VI of the order. For the reasons set forth below, we affirm as modified.

Under the first point, appellant argues that the chancery order does not comply with Section I of Administrative Order No. 10 in that it fails to mention the child's best interest, appellee's income, or

the amount of child support that would be required by the family-support chart. These three requirements are addressed by our statutes and case law as well as by administrative order.

◼ Section I of Administrative Order No. 10 sets forth the rebuttable presumption that the amount of child support calculated pursuant to the most recent revision of the family-support chart, promulgated by the Arkansas Supreme Court, is the amount of child support to be awarded in a judicial proceeding for child support. Although the amount of child support a chancery court awards lies within the sound discretion of the chancellor and will not be disturbed on appeal absent an abuse of discretion, reference to the family-support chart is mandatory. *Schumacher v. Schumaher*, 66 Ark. App. 9, 986 S.W.2d 883 (1999); *see* Ark. Code Ann. § 19-14-106(a)(1)(A) (Repl. 1998). The most recent revision of the child-support chart is found at *In Re: Administrative Order No. 10: Arkansas Child Support Guidelines*, 331 Ark. 581, 582 (1998). Section I addresses the rebuttable presumption created by the chart:

> The court may grant less or more support if the evidence shows that the needs of the dependents require a different level of support.

> It shall be sufficient in a particular case to rebut the presumption that the amount of child support calculated pursuant to the Family Support Chart is correct, if the court enters in the case a specific written finding within the Order that the amount so calculated, after consideration of all relevant factors, including the best interests of the child, is unjust or inappropriate. Findings that rebut the guidelines shall state the payor's income, recite the amount of support required under the guidelines, recite whether or not the Court deviated from the Family Support Chart and include a justification of why the order varies from the guidelines as may be permitted under SECTION V. . . .

*Id.* at 582.

◼ Section V, to which Section I directs us, is entitled "deviation considerations" and sets forth two lists of factors. There are twelve relevant factors to be considered in determining appropriate amounts of child support, and there are seven additional factors that may warrant adjustments to the support obligations. Relevant factors *shall include* food, shelter and utilities, clothing, medical expenses, educational expenses, dental expenses, child care,

accustomed standard of living, recreation, insurance, transportation expenses, and *other income or assets available to support the child.* 331 Ark. at 585-86 (emphasis added). Additional factors that may warrant adjustments to child-support obligations include *the support required and given by a payor for dependent children, even in the absence of a court order.* 331 Ark. at 586 (emphasis added).

Arkansas Code Ann. § 9-12-312(a)(2) (Supp. 1999) also sets forth guidelines to be followed in setting the amount of child support:

In determining a reasonable amount of support, initially or upon review to be paid by the noncustodial parent, the court shall refer to the most recent revision of the family support chart. It shall be a rebuttable presumption for the award of child support that the amount contained in the family support chart is the correct amount of child support to be awarded. *Only upon a written finding or specific finding on the record that the application of the support chart would be unjust or inappropriate, as determined under established criteria set forth in the family support chart, shall the presumption be rebutted.*

(Emphasis added.)

In the present case, a letter opinion supporting the March 1999 order includes the language of section 9-12-312(a)(2) as well as language from Section V of Administrative Order Number 10. The letter includes a finding that a change of circumstances had occurred, but that the chart amount would be unjust considering appellee's finances and all his dependents. Calculation of the original child support and the increased amount was addressed as follows:

In the September [26], 1995 order, child support was set at $737.50 per month by agreement of the parties. Both parties were represented by different attorneys than current counsel. After reviewing the record and the settlement offered, this Court could not establish how the parties had arrived at the figure of $737.50 per month. A financial affidavit prepared by the defendant and signed on June 29, 1995 indicated a weekly take home pay of $1405.44. If that figure had been used in 1995, the chart amount would have been $906.23 per month. Both parties were given time to supplement the record to present testimony as to how the figure of $737.50 was established. However no evidence was presented.

The plaintiff's argument as to a change in circumstances is that defendant is now earning more money. The defendant, Dr. Gerry San Pedro, moved from Little Rock and is now employed by the Louisiana Medical Center in Shreveport, Louisiana. The testimony of the defendant, his affidavit of financial means and his previous tax returns indicate an average weekly take home income of $1811.04 as compared to $1,405.44 in 1995. The sum of $1,811.04 weekly would place the child support amount at $271.65 per week or $1,168.00 per month according to the child support chart.

▮ Appellant argues that neither the March 1999 order nor the letter opinion states appellee's income or the amount required by the chart; that although the letter opinion seems to recognize the best interests of appellee's other four children, the March 1999 order fails to mention the best interest of the child whose best interest was before the court; and that the record "just barely" supports the reasons given in the letter opinion that the amount would be unjust. Recognizing that the judge's letter opinion is drafted by the judge, whereas the order is usually drafted by the prevailing attorney,[1] we hold that in this case the letter opinion and the order can both be considered by this court.

▮ Here, the letter opinion states that "[appellee's] affidavit of financial means and his previous tax returns indicate an average weekly take home income of $1,811.04," and that the chart amount for this pay is $271.65 weekly or $1,168.00 monthly; it concludes with a finding that the child-support amount was unjust considering appellee's finances and all his dependents, and it notes that the newly-set amount of $970.75 is a monthly increase of $323.25. This increased amount clearly was awarded in the child's best interest, as was further shown by the chancellor's careful questioning of the parties, her recitation of the administrative order and relevant statutes, and her review of case law. We think the chancellor exhibited thorough knowledge of the requirements of the applicable rule and statute, and we will not require use of the words "best interest of the child" when it is obvious to us that the chancellor considered the child's best interest in finding the guidelines to be unjust as applied to the facts of this case. *Cf. Fitzgerald v. Fitzgerald*, 63 Ark. App. 254, 976 S.W.2d 956 (1998) (reversing and

---

[1] Counsel for appellee acknowledges in his brief that "the better approach would have been to re-write the chancellor's letter opinion."

remanding custody determination where neither the letter opinion, the order, nor the chancellor's comments from the bench included a finding of what was in the child's best interest). The fact that the chancellor mentioned some, but not all factors that are to be considered, reflects that those mentioned were out of the ordinary and were central to the pivotal issue, which was appellee's ability to pay as a circumstance that had changed since entry of the earlier order. Finally, regarding the "unjustness" of the chart amount, it is clearly permissible to consider financial obligations of the payor spouse, including support of other children. *Department of Human Services v. Forte*, 46 Ark. App. 115, 877 S.W.2d 949 (1994); Administrative Order No. 10—Arkansas Child Support Guidelines, Section V.

Appellant's second point of appeal is that the court violated Section VI of Administrative Order No. 10. This section states in part:

> Excluding weekend visitation with the custodial parent, in those situations where a child spends in excess of 14 consecutive days with the noncustodial parent, the court should consider whether an adjustment in child support is appropriate. . . .*Any partial abatement or reduction of child support should not exceed 50% of the child-support obligation during the extended visitation period of more than 14 consecutive days.*

581 Ark. at 331 (emphasis added). Appellant contends that total abatement of child support during appellee's eight weeks of summer visitation is prohibited under Section VI. She requests this court to modify the chancery order and to provide for no more than a 50% abatement.

The interpretation of this section, which appears to be a question of first impression, turns upon the meaning of the word "should" in the phrase "[a]ny partial abatement or reduction of child support should not exceed 50% of the child-support obligation during the extended visitation period." In *Little v. State*, 261 Ark. 859, 554 S.W.2d 312 (1977), the supreme court ruled that the trial court, giving an instruction on circumstantial evidence, had not misled the jury by using the word "should" instead of "must" in stating that circumstances should point to and be consistent with guilt but should be inconsistent with any other reasonable hypothesis. The *Little* court opined that use of the word "must" would have been preferable to the use of "should," but the court noted that the

words are often synonymous. 261 Ark. at 884, 554 S.W.2d at 324, citing Rodale, *The Synonym Finder* 780 (Special Deluxe Ed.).

■ Similarly, we hold that the word "should" is equivalent to the word "must" as used in the phrase "any partial abatement or reduction of child support should not exceed 50% of the child-support obligation during the extended visitation period." We hold that the 50% limitation in Administrative Order No. 10 is mandatory: abatement or reduction of child support during an extended visitation period cannot exceed 50% of the child-support obligation during the extended visitation period.

■ The chancery court erred in abating the child support entirely for the eight-week period of summer visitation. Accordingly, we modify the abatement of child support for the period of summer visitation by setting it at 50%. The court may continue to prorate the child-support payments over a twelve-month year. We remand for entry of an order in keeping with this directive.

Affirmed as modified, and remanded.

JENNINGS and GRIFFEN, JJ., agree.