Aaron COLLINS and Diane Collins *v.*
Burl KELLER, Carol Keller, and
Jeremy's Investments, Inc.

97-1012                                   969 S.W.2d 621

Supreme Court of Arkansas
Opinion delivered May 14, 1998

*Philip Jack Taylor,* for appellants.

*Thurman Ragar, Jr.,* for appellees.

TOM GLAZE, Justice. Appellants Aaron and Diane Collins bring this appeal from the Crawford County Chancery Court's finding that they had breached their contract to purchase two unimproved lots from appellees, Burl and Carol Keller and Jeremy Investments, partners who own a subdivision named Butterfield Trail Properties. This court's jurisdiction was invoked because this case involves issues concerning the interpretation and application of the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.,* and the Interstate Land Sales Act, 15 U.S.C. § 1701 *et seq.*

On May 2, 1992, appellees sold the two disputed lots to the appellants by a contract for deed. The purchase price was for $15,000.00 at 8.5% in 239 amortized monthly payments of $128.90. Appellants' first payment was due on June 1, 1992, and subsequent payments were to be made each month thereafter. The parties agreed that, if appellants failed to make a payment within fifteen days after a monthly payment was due, or after twenty days' notice appellants failed to pay the taxes, appellees could declare the entire balance of the purchase price due, or

could rescind and declare the entire contract forfeited. In addition, if appellees duly declared a forfeiture, they could further demand immediate possession of the property, and retain previous payments as liquidated damages, whereupon appellants would become tenants and pay monthly rental payments in the amount of $128.90.

Appellants defaulted commencing on their first payment, and thereafter, never came into compliance with the terms of the parties' contract. At one stage, appellants did reach some agreement with appellees to pay on the arrearages, along with continuing their $128.90 monthly payments, but because appellant Aaron Collins sustained a back injury and could not work, appellants were unable to make their payments and therefore, continued in default.

On October 27, 1995, appellees brought suit against appellants for breach of contract and unlawful detainer, and appellants later filed a motion to dismiss, an answer asserting affirmative defenses, and a counterclaim.[1]

In their counterclaim, appellants alleged the appellees had violated the Truth-in-Lending Act by failing to make certain required material disclosures. Additionally, appellants, in their counterclaim, tendered the subject property to appellees, requested rescission of the parties' contract, and asked for damages provided under the Truth-in-Lending Act.

At a hearing on May 12, 1997, appellants admitted they were in default of the parties' May 2, 1992 contract, and conceded they had made only seventeen payments in fifty-nine months. Nonetheless, appellants asserted that they were entitled to relief in the form of rescission under the Truth-in-Lending Act, and added that they had a similar right to relief for appellees' having violated the federal Interstate Land Sales Act. Appellants also argued that

---

[1] Appellees initially filed their claim in the Crawford County Circuit Court, where appellants filed a pro se answer and "objection." However, after the circuit court entered an order in appellees' favor, and appellants moved to set aside that order, the circuit court granted appellants' motion, but removed the case with directions to transfer it to chancery court.

appellees' finance charge under the May 2 contract was usurious, and additionally claimed damages for conversion, alleging appellees had wrongfully removed shale from the property while appellants owned and were in possession of the lots.

On June 3, 1997, the trial court entered its order finding the appellants had breached the parties' May 2, 1992 contract by failing to make timely payments and concluded the contract had been effectively terminated on October 27, 1995, when appellees filed this suit. Because appellants continued to hold possession of the property after defaulting, the trial court determined appellees were entitled to rent from appellants in the sum of $4,640.50. Also, because appellants were in default, the trial court denied their conversion claim, holding they had no equitable or legal title in the lots or the shale at the time it was removed. Regarding the appellants' Truth-in-Lending Act claims, the trial court held they were barred from asserting those claims because of the doctrines of laches and estoppel. Finally, the trial court ordered appellants to vacate the two lots, and if they failed to do so, directed a writ of assistance would be issued to oust them.

Appellants raise five points for reversal, but their points one, two, and four are basically grounded in rescission rights they assert they are entitled to under either the federal Truth-in-Lending Act or the Interstate Land Sales Act or both. We hold the appellants are not availed entitlement to those federal laws or the rescission rights provided in these acts. In their first argument, appellants urge the trial court erred in denying them rescission because the appellees failed to provide material disclosure forms required by the Truth-in-Lending Act and its regulations, and appellees made misstatements and material omissions of facts that violated both the Truth-in-Lending Act and the Interstate Land Sales Act.

First, we note that appellants never specified the Interstate Land Sales Act as an affirmative defense, nor did they mention the Act in their counterclaim. Appellants did submit the Interstate Land Sales Act to the trial court to support their request for rescission, but the trial court never addressed or ruled on that Act's applicability to the parties' contract. It is well settled that an

issue must be raised and ruled on before we consider it on appeal. *Hercules, Inc. v. Pledger*, 319 Ark. 702, 894 S.W.2d 576 (1995).

█ While other reasons may be suggested that would support the trial court's decision denying appellants' request for rescission under the federal laws, the court was correct in refusing such relief because appellants' request was untimely. Specifically, § 1635(a) of the Truth-in-Lending Act limits an obligor (as appellants purport to be under the Act) the right to rescind a consumer credit transaction until midnight of the third business day following the consummation of the transaction *or* the delivery of the information and rescission form required under § 1635. Section 1635(f) further provides that an obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under the section or any other disclosure required under this provision have not been delivered to the obligor.

█ The Interstate Land Sales Act, likewise, has provisions that limit when a purchaser of property can seek rescission for the seller's violation of the Act. Section 1703(b), for instance, provides in relevant part, that any contract for the sale of a lot not exempt under the Act may be revoked at the option of the purchaser until midnight of the seventh day following the signing of such contract or until such later time as may be required by state laws. Also, any such contract for the sale of a lot not exempted under the Act may be revoked at the option of the purchaser for two years from the date of the signing of such contract. *See* § 1703(d).[2]

█ Here, appellants failed to act timely under the provisions of both the Truth-in-Lending and Interstate Land Sales Acts. In fact, appellants waited to assert their rescission rights only after appellees brought suit against them for having defaulted on their contract, which occurred more than three years after the parties' contract was consummated.

---

[2] Appellants seem to argue this two-year period for revoking a contract might be extended under situations described in § 1703(d)(1), (2), and (3), but those situations describe circumstances that require a seller to make a specified refund.

■ ■   In their second point, appellants complain that the appellees had defaulted in the suit below because they failed to answer the appellants' counterclaim. Once the trial court determined that appellees had filed no timely response, appellants argue they were entitled to a default judgment. They also contend the trial court erred in finding the appellees were entitled to the affirmative defenses of laches and estoppel, even though those defenses were never pled by the appellees and are inapplicable to the facts of this case. However, as appellants failed to object to the trial court's findings at the May 12, 1997 hearing, they have waived their opportunity to raise the issue on appeal. *Stacks v. Jones*, 323 Ark. 643, 916 S.W.2d 120 (1996). Moreover, contrary to the appellants' argument, under ARCP Rule 55(a), the entry of a default judgment is discretionary rather than mandatory. Appellants never proved any claim or damages under the federal laws, thus, the trial court correctly denied appellants the relief they sought.

■   As previously noted, appellants' fourth point is also premised on their federal claims, and asserts that the trial court erred in awarding appellees rental damages under the terms of the parties' May 2, 1992 contract. Relying on the Truth-in-Lending and Interstate Land Sales Acts, appellants argue the May 2 contract should have been rescinded, thereby discharging them from any obligation for rental damages. Again, appellants were not entitled to rescission of the contract, and because they indisputably remained in default of its terms, the trial court appropriately addressed the rental damages to which appellees were due under the contract.

■   We now come to appellants' damage claims for appellees' alleged violation of Arkansas' usury laws and of conversion of the shale taken from the two lots in dispute. Appellants' usury claim can be summarily dismissed, since the trial court never ruled on this issue. *McQuay v. Guntharp*, 331 Ark. 466, 963 S.W.2d 583 (1998).[3] Concerning appellants' claim for conversion, the trial court denied this request because they never had legal title

---

[3] Appellants did request the trial court to rule on their counterclaim for conversion and for additional findings, but the usury claim was not mentioned.

to the two lots, and since appellants were in default, they never obtained any equitable title to the property. The trial court ruled that appellants were merely tenants at sufferance, and as such possessed no interest in the shale located on and taken from the property, and therefore had no conversion claim for the shale. We affirm the trial court's holding.

◼ Appellants mention various, somewhat confusing, arguments when asserting they had obtained an equitable interest in the two lots which supported their conversion claims. In this respect, they point out that only appellee Burl Keller signed the contract for deed, and as a consequence the parties' agreement was never effective. However, once again, appellants failed to get a ruling on this issue below, and thus cannot argue the issue on appeal.

◼ Appellants urge that, even if they were in default on the contract, they could still enforce their rights to the converted shale under the federal Truth-in-Lending Act. However, as previously discussed, laches and the statute of limitations barred any right appellants may have had under the Truth-in-Lending Act.

◼ Appellants also argue the parties' contract for deed operated as an equitable conversion by which appellants' interest, as purchasers, became real estate. While appellants argue they had an equitable interest in the disputed property until appellees rescinded the contract for deed, the record reflects that the appellants' rights in the property were subject to a forfeiture clause of an executory contract which they breached. Appellees elected to seek strict enforcement of their rights under the contract, and the trial court correctly rejected appellants' equitable conversion argument, which, if applied, would have effectively and improperly rewritten the parties' argument. *See Smith v. MRCC Partnership,* 302 Ark. 547, 792 S.W.2d 301 (1990); *Humke v. Taylor,* 282 Ark. 94, 666 S.W.2d 394 (1984); *White v. Page,* 216 Ark. 632, 226 S.W.2d 973 (1950). From our review of the record, we are unable to say the trial court was wrong in holding that the forfeiture provisions of the parties' contract were valid and timely enforced. *Ashworth v. Hankins,* 248 Ark. 567, 452 S.W.2d 838 (1970).

Finally, appellants contend their substantial rights were violated because the trial court did not allow them sufficient time at trial to call their witnesses and establish their case. Appellants did not raise this issue below and therefore may not argue it on appeal. *Zhan v. Sherman*, 323 Ark. 172, 913 S.W.2d 776 (1996). In sum, as appellants have failed their burden of proving the chancellor's findings were clearly erroneous or against the preponderance of the evidence, we affirm.