Jerome GRAVES *v.* Loran Graves STEVISON

CA 02-600                                    98 S.W.3d 848

Court of Appeals of Arkansas
Division II
Opinion delivered March 5, 2003

*W. Marshall Prettyman*, for appellant.

*J. Shane Baker*, for appellee.

SAM BIRD, Judge. This appeal is from an order denying appellant Jerome Graves's motion, on the ground of fraud, to abate his child-support obligation for a child who was born to his ex-wife, appellee Loran Graves Stevison, a few weeks before the parties' divorce was final. The Crittenden County circuit judge denied his motion on the basis of *res judicata*. We affirm the denial of appellant's motion for two reasons not expressed by the judge.

The parties were married in September 1986 and separated in May 1987. On March 14, 1988, appellee filed for divorce and stated in her complaint that she was expecting a "child of the marriage." Although appellant was served with process, he did not file an answer or otherwise defend the action. The child, Julia, was born on July 20, 1988. The judge granted appellee a divorce on August 10, 1988. Finding that the parties had one minor child, the judge awarded appellee custody of Julia and ordered appellant to pay child support in the amount of $20 per week. In a later URESA action from Tennessee filed in the Crittenden County Chancery Court, Case No. E89-1750, the Office of Child Support Enforcement (OCSE) obtained a judgment against appellant for arrearages and an order requiring appellant to pay $20 per week for the support of the child.

On January 26, 2000, appellant filed a petition for relief from judgment in the original divorce action, alleging that, at the time of the divorce he did not doubt that he was Julia's father but had since learned otherwise. He requested that he be relieved of his obligation to pay child support for Julia. To his complaint, appellant attached appellee's affidavit, wherein she stated:

> 3. During the marriage, one child was born to me, namely Julia Renee Graves, born July 20, 1988. This child was listed as a child of the marriage in the divorce decree. However, Jerome Graves is not the father of Julia Renee Graves. Jerome Graves was listed as the father of the child because we were still married at the time of her birth.

> 4. Julian Partee is the father of the child. He is also the father of my child Asia Graves, born May 31, 1989. I believe he lives in Memphis, Tennessee, but I do not know his address.

The OCSE's action against appellant in E89-1750 was consolidated with this case, and the OCSE assumed the status of an intervenor. Blood tests that were performed later determined that appellant is not Julia's father.

Appellant argued below that, pursuant to Ark. R. Civ. P. 60(c)(4), he was entitled to have the determination of his paternity in the divorce decree set aside because appellee had committed intrinsic fraud. Formerly, a judgment could be set aside under that rule for extrinsic, but not intrinsic, fraud. Rule 60(c)(4) was amended in January 2000. The amendment abolished the traditional distinction between intrinsic and extrinsic fraud and provided that, after ninety days, a judgment may be set aside for "fraud (whether heretofore denominated intrinsic or extrinsic) by an adverse party." According to appellant, the amendment to the Rule made it possible for the court to set aside the determination of his paternity of Julia. The OCSE argued in response that the determination of the child's paternity was *res judicata* and could not be relitigated by the parties. It also argued that, although Lord Mansfield's Rule[1] had been abrogated, the best interests of the child would not be served in this situation by relitigating her paternity. The OCSE further argued that appellant had failed to prove that any fraud, intrinsic or extrinsic, had occurred.

A hearing was held on the motion. The record does not reveal that any testimony was taken. On December 18, 2000, the judge issued a letter opinion, wherein he stated:

> It is true, as defendant asserts, that fraud in procurement of the judgment is a defense against application of the doctrine of res judicata. *Wells v. Ark. Public Service Commission*, [272] Ark. 481, 616 S.W.2d 718 (1981). The query here, is the non-disclosure of plaintiff to defendant that he may not be the father, such fraud as to defeat the defense of res judicata? Clearly, prior to amendment of Rule 60(c), it was not, the extrinsic/intrinsic rule holding sway. *Alexander v. Alexander*, 217 Ark. 230, 229 S.W.2d 234 (1950).

---

[1] In 1915, Arkansas adopted Lord Mansfield's Rule, which barred a husband and wife from testifying in a paternity proceeding as to the husband's non-access during the period of conception. *Thomas v. Pacheco*, 293 Ark. 564, 740 S.W.2d 123 (1987).

The holding, tone and tenor of *OCSE v. Williams*, 338 Ark. 347, 995 S.W.2d 338 (1999), suggests that this type fraud is tolerated in Arkansas, as well as other jurisdiction[s], on some public policy basis that children of such marriages are entitled to be supported. To this Court, it is bad policy to reward an adulterous, deceitful, nefarious, lying litigant to saddle an unsuspecting man with such a burden, but it appears to be the law, and this Court is obliged to enforce it, as distasteful as it is. It is not as though the child will remain in blissful ignorance of the true fact. Here, her mother has filed an affidavit, admitting her perjured testimony, and named the true father.

Defendant cites *OCSE v. Mitchell*, 61 Ark. App. 54, 964 S.W.2d 218 (1998), but that case dealt with a child out-of-wedlock, and *Williams* seems to hold cases of that sort are on a different footing than children born during a marriage.

In sum, the Court find[s] that *Williams* controls the outcome here, and the January, 2000 amendment to Rule 60(c) does not offer a reason to escape the effect of res judicata on the prior holding that defendant is the father.

The order denying appellant's motion to abate child support on these grounds was filed on March 8, 2002. It is from that order that this appeal follows.

## Arguments

Appellant contends on appeal as he did below that, pursuant to the January 2000 amendment to Ark. R. Civ. P. 60(c)(4), which abolished the distinction between intrinsic and extrinsic fraud, he was entitled to relief from the judge's finding that he is the father of the child and to abatement of his child-support obligation. He argues that judicial determinations of paternity are no exception to the remedy provided by Rule 60(c)(4) to litigants who have been defrauded. He also asserts that he did not have a fair opportunity to litigate the issue of paternity prior to the entry of the divorce decree because of the application of Lord Mansfield's Rule, which has since been abrogated by Ark. Code Ann. § 16-43-901 (Repl. 1999). Appellant further contends that *Office of Child Support Enforcement v. Williams*, 338 Ark. 347, 995 S.W.2d 338 (1999), on which the judge relied, is factually and legally dis-

tinguishable from this situation. We need not decide these issues because Rule 60 does not apply in this case and appellant failed to establish fraud.

*Rule 60(c)(4), Rule 55(c), and Fraud*

■  Appellant's reliance upon Rule 60 is misplaced because the divorce decree was a default judgment, to which Rule 60 does not apply. Although appellant was served with process, he did not file an answer or otherwise appear in the divorce action before the decree was filed. Arkansas Rule of Civil Procedure 55(a) states: "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, judgment by default may be entered by the court." Rule 60(c)(4) expressly provides that it does not apply to default judgments:

> (c) *Grounds for Setting Aside Judgment, Other Than Default Judgment, After Ninety Days.* The court in which a judgment, other than a default judgment [which may be set aside in accordance with Rule 55(c)] has been rendered or order made shall have the power, after the expiration of ninety (90) days of the filing of said judgment with the clerk of the court, to vacate or modify such judgment or order:

> . . . .

> (4) For misrepresentation or fraud (whether heretofore denominated intrinsic or extrinsic) by an adverse party.

■  Additionally, the Reporter's Notes to Rule 55 state that it is "the exclusive basis for setting aside a default judgment" and that, "[a]s amended in 1990, Rule 60 does not apply to default judgments." The court may, upon motion, set aside a default judgment previously entered for the reason of fraud. *See* Rule 55(c)(3).[2] Unlike Rule 60(c)(4), Rule 55(c) was not amended to include intrinsic fraud as a basis for setting aside a judgment. Therefore, we conclude that extrinsic fraud is still required to set aside a default judgment.

---

[2] Appellant does not argue any reason besides fraud as a basis for setting aside the decree.

■ ■    Our next question is whether appellant established extrinsic fraud.  In *Ward v. McCord,* 61 Ark. App. 271, 966 S.W.2d 925 (1998), we discussed extrinsic fraud, which was then required to set aside a decree under Rule 60(c)(4):

> [T]he fraud for which a decree will be canceled must consist in its procurement and not merely in the original cause of action. *First Nat'l Bank v. Higginbotham Funeral Serv., Inc.,* 36 Ark. App. 65, 818 S.W.2d 583 (1991). It is not sufficient to show that the court reached its conclusion upon false or incomplete evidence, or without any evidence at all, but it must be shown that some fraud or imposition was practiced upon the court in the procurement of the decree, and this must be something more than false or fraudulent acts or testimony the truth of which was, or might have been, an issue in the proceeding before the court which resulted in the decree assailed. *Id.* . . . . The party seeking to set aside the judgment has the burden of showing that the judgment was obtained by fraud, and the charge of fraud must be sustained by clear, strong, and satisfactory proof. [*Id.*] Whether the procurement of a judgment amounted to fraud upon the court is a conclusion of law. *Hardin v. Hardin,* 237 Ark. 237, 372 S.W.2d 260 (1963).

61 Ark. App. at 279-81, 966 S.W.2d at 928-30 (citations omitted).  The only evidence offered by appellant was Ms. Stevison's affidavit, quoted above.  The record contains no testimony from the divorce trial or from the hearing on appellant's motion.  The conclusion is inescapable that appellant did not establish extrinsic fraud.

■ ■    The standard of review of an order denying a petition to set aside a default judgment is whether the trial judge abused his discretion.  *Collins v. Keller,* 333 Ark. 238, 969 S.W.2d 621 (1998); *Layman v. Bone,* 333 Ark. 121, 967 S.W.2d 561 (1998).  Based on the foregoing considerations, the judge did not abuse his discretion in refusing to grant appellant's motion.

Affirmed.

ROBBINS, J., agrees.

GRIFFEN, J., concurs.

WENDELL L. GRIFFEN, Judge, concurring. I agree with the result and reasoning announced in the principal opinion authored by Judge Bird and file a separate concurrence to address two concerns. First, as author of our decision in *Golden v. Golden*, 57 Ark. App. 143, 942 S.W.2d 282 (1997), I want to highlight the differences between that case and the one at hand. In *Golden*, we held that a trial judge did not err in a divorce proceeding by refusing to find the wife *estopped* from denying her husband's paternity of a minor child born during the marriage under the doctrine of *res judicata*. *Golden* involved a challenge to paternity made by the wife during the context of the divorce action itself. Unlike in this case, where the trial court has already entered a decree finding that the parties had a minor child born of the marriage, awarded child custody, and ordered payment of child support, in *Golden* there was no previous court finding — accurate or not — that the child was born of the marriage. As such, the doctrine of *res judicata* did not apply. We are confronted with a much different scenario in this case.

My second reason for filing this concurring opinion relates to the candid and, in my view, compelling observation made by Judge VanAusdall, the trial judge in this case.

> The holding, tone and tenor of *OCSE v. Williams*, 338 Ark. 347, 995 S.W.2d 338 (1999), suggests that this type fraud is tolerated in Arkansas, as well as other jurisdictions, on some public policy basis that children of such marriages are entitled to be supported. To this Court, it is bad policy to reward an adulterous, deceitful, nefarious, lying litigant to saddle an unsuspecting man with such a burden, but it appears to be the law, and this Court is obliged to enforce it, as distasteful as it is. It is not as though the child will remain in blissful ignorance of the true fact. Here, her mother has filed an affidavit, admitting her perjured testimony, and named the true father.

Appellee alleged in her divorce complaint and testified during the uncontested divorce proceeding that she was "expecting a child of the marriage." Appellant did not contest the divorce and apparently did not controvert the allegation of paternity in the divorce complaint despite having been served with process. Thus, the divorce decree declares: "[t]he parties have one (1) minor

child, namely: Julia Renee Graves, born July 20, 1988," and ordered appellant to pay child support.

As the principal opinion states, this case is not controlled by Rule 60(c) of the Arkansas Rules of Civil Procedure, but by Rule 55(c), the rule that governs default judgments. Rule 60(c) has ended the intrinsic/extrinsic fraud distinction for vacating judgments tainted by fraud so that litigants in contested matters can obtain relief. What I do not understand is why we apparently recognize the value of allowing truth to prevail over fraud in contested matters so as to permit judgments procured through fraud to be vacated under Rule 60(c), but have not amended Rule 55 to permit similar treatment for default judgments. Uncontested divorces are not unusual, nor do they indicate lack of interest in the judicial proceeding by the uncontesting litigants. In some instances, persons of meager income may decide that engaging in a legal contest will take money away from other more pressing needs. Litigants who do not respond to divorce complaints involving allegations of paternity and petitions for child support may, as shown in this case, not know that they have countervailing grounds for divorce, let alone reasons to contest paternity.

Julia Graves and other children in her situation deserve child support, to be sure. However, they deserve to be supported by the men responsible for their existence, not men deceived by their mothers so the mothers can collect child-support payments. We do not allow perpetrators of fraud to profit from their deceit in any other area of the law. I see no reason why we should make an exception in family law.

The idea expressed in *Williams* that we should not look behind a trial court's determination of paternity because we want to preserve the relationship between children and their fathers is well-intentioned, but unpersuasive. I suspect that some men who discover that they have been the victims of adultery and deceit have established nurturing relationships with their putative children and will desire to maintain those relationships. In *Golden* we affirmed the trial court's decision recognizing visitation rights for the stepfather precisely for that reason.

But there is another concern we must not ignore. Men who discover they have been tricked into paying child support will not forget that they have been tricked when it comes to dealing with the children they are compelled to support. The law can take a man's money by court order, however, no court can force a man to love a child he knows is not his own. Refusing to relieve men from the obligation to pay child support for children they never sired, but were tricked into acknowledging, does not turn them into fathers. It simply makes the law the oppressive ally of fraudulent mothers.

The consequences of following *Williams* are troubling in another respect. Men who are compelled to pay child support based on court orders that declare them fathers of children they did not sire may wonder, with justification, how they can obtain financial reimbursement for the money they lost. If they sue the women whose allegations led to the mistaken judicial findings of paternity, the *Williams* holding seems to protect the women from liability. If they seek contribution from the actual fathers, it is unclear how the actual fathers might be held liable to reimburse putative fathers for support payments ordered by trial courts upon explicit paternity findings. This may not concern some observers, but it should. After all, the whole purpose of our legal system is to fashion orderly and *just* outcomes to disputes.

Like Judge VanAusdall, I am obliged to apply the law set forth by our supreme court in *Williams*. But I agree that it is unsound policy to force unsuspecting men to pay child support for children they never fathered simply because the men and judges have been deceived into believing allegations by mothers about paternity. If we have enough sense to recognize the effects of paternity testing when we get them, we should have enough sense to vacate inaccurate legal pronouncements of paternity in divorce decrees and child- support orders whether they occur in contested matters or not. After all, a judicial process based on lies will be legal as long as it can compel obedience. Any process that defies the truth it discovers in favor of a lie it formerly believed is ultimately unjust and undeserving of respect, no matter how much we rationalize it and despite our success in compelling deceived men to obey it.