287 S.W.3d 601 (2008)
Heather Lynn HARRISON, Appellant,
v.
Robert Brooks HARRISON, Appellee.
No. CA 07-587.
Court of Appeals of Arkansas.
September 17, 2008.
*603 Ann B. Hudson, for appellant.
Goodwin Moore, LLP, by: Harry Truman Moore; and Bristow & Richardson, PLLC, by: Melissa B. Richardson, for appellee.
DAVID M. GLOVER, Judge.
In Harrison v. Harrison, CA07-587, 2008 WL 943915 (April 9, 2008), a five-to-four decision, we reversed the trial court's decision to leave custody of the parties' minor child, O.H., with her father, appellee Brooks Harrison. We ordered the circuit court to enter an order granting a change of custody to the mother, appellant Heather Harrison, holding that the trial court's findings regarding O.H.'s best interests were clearly erroneous and clearly against the preponderance of the evidence. Subsequently, Brooks filed a petition for rehearing, arguing that the majority opinion contained mistakes of fact and mistakes of law, including that the majority failed "to adhere to the well-settled standard of review in custody cases," that Brooks "had a duty to volunteer to the trial court during his divorce hearing that he was dating another woman," and that the majority failed to limit its review of the case to the record before it and instead speculated "as to what testimony at the initial trial might have been and assum[ed] custody was denied or awarded on a singular issue." On rehearing, we agree that the original opinion is incorrect in these areas of the law, and we therefore issue this substituted opinion affirming the trial court's original decision to leave custody of O.H. with Brooks.[1]
The parties were divorced in February 2004. At that time, the trial court found that it was in the best interest of O.H., who was just over three years old, for Brooks to have custody of her. In July 2005, Heather filed a petition for change of custody, alleging that there had been a material change in circumstances. Specifically, Heather alleged that since the date of the divorce, Brooks had impregnated his "live-in" girlfriend, which was a poor example for O.H.; that Brooks had now married his girlfriend and that she was now the primary caretaker of O.H., not Brooks; that she had more time to devote to O.H. than Brooks and that she needed more contact and interaction with O.H. than her visitation allowed; that Brooks did not allow *604 more visitation than the visitation schedule allowed; and that it was in the best interest of O.H. to spend more time with and be in the custody of her mother. Heather also filed a petition requesting that Brooks be held in contempt for his failure to provide her visitation on one occasion. After a complete hearing on these issues, the trial court declined to hold Brooks in contempt and dismissed the contempt petition; he also found that Heather had failed to meet her burden of proof in establishing that there had been a material change in circumstances since the entry of the divorce decree or that it was in the best interest of O.H. to modify custody; and he dismissed Heather's petition to modify custody.
Although she argues several different bases, Heather truly raises only one issue on appealthat the trial court erred in denying her petition for change of custody because it was in the best interest of the parties' daughter that custody be changed to her. In this fact-based opinion, we affirm the trial court's denial of her petition for a change of custody based upon our standard of review.
In Hamilton v. Barrett, 337 Ark. 460, 465-66, 989 S.W.2d 520, 523 (1999), our supreme court set forth the appellate court's well-settled standard of review applied in custody cases:
In reviewing [equity] cases, we consider the evidence de novo, but will not reverse a [trial court's] findings unless they are clearly erroneous or clearly against the preponderance of the evidence. Jones v. Jones, 326 Ark. 481, 931 S.W.2d 767 (1996). We give due deference to the superior position of the [trial court] to view and judge the credibility of the witnesses. Noland v. Noland, 330 Ark. 660, 956 S.W.2d 173 (1997). This deference to the [trial court] is even greater in cases involving child custody, as a heavier burden is placed on the [trial court] to utilize to the fullest extent [its] powers of perception in evaluating the witnesses, their testimony, and the best interest of the children. Anderson v. Anderson, 18 Ark.App. 284, 715 S.W.2d 218 (1986). Where the [trial court] fails to make findings of fact about a change in circumstances, this court, under its de novo review, may nonetheless conclude that there was sufficient evidence from which the [trial court] could have found a change in circumstances. Campbell v. Campbell, 336 Ark. 379, 985 S.W.2d 724 (1999); Stamps v. Rawlins, 297 Ark. 370, 761 S.W.2d 933 (1988).
Our law is well settled that the primary consideration in child-custody cases is the welfare and best interest of the children; all other considerations are secondary. Digby v. Digby, 263 Ark. 813, 567 S.W.2d 290 (1978). A judicial award of custody should not be modified unless it is shown that there are changed conditions that demonstrate that a modification of the decree is in the best interest of the child, or when there is a showing of facts affecting the best interest of the child that were either not presented to the [trial court] or were not known by the [trial court] at the time the original custody order was entered. Jones, 326 Ark. 481, 931 S.W.2d 767. Generally, courts impose more stringent standards for modifications in custody than they do for initial determinations of custody. Id.

From the testimony at the change-of-custody hearing, it appears that one of the bases upon which custody was originally granted to Brooks was because Heather was having a relationship with another man during the pendency of the parties' divorce. Heather did not provide any of the testimony from the divorce hearing; therefore, we are unable to determine the *605 other reasons, if any, why the trial judge, who presided over both hearings, granted initial custody to Brooks. At the change-of-custody hearing, Heather presented testimony that Brooks was likewise having a relationship with another woman before he was divorced and he did not disclose it to the trial court at the time of the divorce; Brooks admitted this. Heather argued that this was a reason to change custody to her, i.e., a material change of circumstances, because this information was unknown to the trial court at the time of the entry of the original custody order. Heather argued that there had been further material changes in circumstances because Brooks had married his current wife after she got pregnant; that his second wife had another child out of wedlock; that to a large extent Brooks had turned over parenting responsibilities to his new wife; that Brooks's second wife is not the ideal person to raise her child; that she (Heather) has the ability and desire to spend the most quality time with the child; that she is denied quality time with her child; that she would set a better moral and scholastic example for the child; and that she would be better able to assist in education.
At the close of the hearing on Heather's petition for change of custody, the trial judge made the following ruling from the bench:
First of all the Court's going to comment about the original decision in which [Brooks] admitted that he was engaged himself in an adulterous relationship at the time of the divorce and that that information was withheld from the Court. The Court agrees with [Heather's] contention that that cast [Brooks] in a bad light with the Court, the Court feeling that not only is he a cheat, but he's a nefarious and devious cheat, and the Court recognizes that. And, of course, that casts questions on the character. And, of course, character is an important factor in determining who should have the children under their tutelage. And had the Court been made known of that at the timeuhof the initial award, it well may be that the decision of the Court would have been different. But, the Court doesn't know that it would have been or not. So, those casesall these cases, custody cases, involveuhnot only the facts and the things thatuhthat bear on the Court's mind, and it would be speculation, frankly, for the Court to say had that been a fact that had been made known to the Court, the decision would have been different. It well may have been. It would be speculating to say that it would have been. And even if the Court could come to that conclusion today, we're not dealing with what might have been had it been.[2]
We're dealing with whether or not that there is sufficient reason to engage and change theuhcustody based upon the law of substantial change in circumstances. We all know that custody is not a matter that is used as a punishment tool or a reward tool. It is a uhit is auhdecision that you want to be dad-gum sure that your primary focusbig, big focusis not to worry about going back and rectifying wrongs, or making rewards, or punishing folks. *606 It's just simply to be sure that based upon today's situation the child isis placed in the best situation that the child could be placed in. So, the Court comes to this conclusion, you hear about the testimony about the need for [Heather] to be the primary caregiver when she's off work and that that's a big change in circumstances, whereas the Court's not sure that is a big change in circumstances. The testimony was at the time of the divorce [Brooks] was utilizing his aunt and his mother to help take care of the child. And since thenuhinstead of utilizing them, he utilizes his present wife. Now, the Court just doesn't see and find that that is a sufficient reason to call that a change in circumstances. The big thing in the Court's mind today is the child seems to be doing so well and established a nice relationship withwith everybody, seems to be enjoying where she lives, seems to be enjoying the visitation with [Heather], and the Court just doesn't see any reason to take a chance with a change in the custody now that we're settled in. [Brooks] rightfully cites to the Court the law that says you have to have a tougher proof in order to make a change than you would on the initialthe initial award. For all those reasons the Court denies the petition to change custody and orders that the custody remain in the charge of [Brooks].
(Emphasis added.)

Material Change in Circumstances
On appeal, Heather again contends that the trial court erred in not changing custody based upon those facts unknown to the trial court at the time of the initial award of custody, namely, that Brooks was likewise dating someone prior to the entry of the divorce decree, which she characterizes as "fraud on the court." Initially, we note that custody is not awarded to reward or punish either parent. Eaton v. Dixon, 69 Ark.App. 9, 9 S.W.3d 535 (2000). While the trial court clearly indicated in its ruling from the bench that it found Brooks's behavior to be less than stellar, it also found that it would be speculation to say that had that fact been known to him at the time of the initial custody award that the decision would have been different. A review of this ruling indicates that all of the evidence presented by Heather at the change-of-custody hearing, including the evidence concerning Brooks's prior extramarital conduct, was taken into consideration by the trial judge in deciding that there was not a material change in circumstances. Regarding Heather's claim that Brooks committed fraud upon the trial court, there is no evidence that Brooks perjured himself at the divorce hearingit simply appears that Heather failed to propound discovery to Brooks regarding extramarital dating or to ask him about it directly at trial. It cannot be argued that Brooks was required to volunteer this information to Heather.
Heather argues that there had been further material changes in circumstances because Brooks married his current wife after she got pregnant; that his second wife had another child out of wedlock; that to a large extent Brooks had turned over parenting responsibilities to his new wife; that Brooks's second wife is not the ideal person to raise her child; that she (Heather) has the ability and desire to spend the most quality time with the child; that she is denied quality time with her child; that she would set a better moral and scholastic example for the child; and that she would be better able to assist in education.
The trial judge's remarks indicate that he did not find any of these arguments sufficient to establish a material change in circumstances; we agree. Heather attacks *607 Brooks's new wife, Melody, because she had a daughter out of wedlock and was pregnant with Brooks's son before they married; however, Heather admitted that one of the men she dated after she divorced Brooks had a child out of wedlock as well. Furthermore, with respect to Melody being pregnant before she wed Brooks, that point was made moot by their wedding. The trial court recognized earlier immaturity in social judgment in both litigants. The evidence showed that they had both crossed into a moral bog at the time of the divorce and that neither side positioned itself as exclusively garrisoned on the moral high ground.
With respect to Melody now "raising" O.H., as the trial court recalled, at the time Brooks was originally awarded custody, he was a fire fighter, and his mother and aunt helped with O.H. when he was on duty. Brooks was still a fire fighter at the change-of-custody hearing, and he testified that when he got remarried, Melody took over in large part from Brooks's mother and aunt helping with O.H. while Brooks was working his shifts. Therefore, the help Brooks requires with O.H. during his shift has not changed, just the person helping him, as the trial court so found. Heather testified that she would have to have someone pick up O.H. from school and to stay with O.H. during the summer while she worked. Therefore, by her own testimony, someone other than Heather would be taking care of O.H. during her work times, which renders Heather's stance somewhat hypocritical.
Heather also argues that Brooks has turned primary care of O.H. over to Melody, who is only a stepparent, not O.H.'s biological parent. We disagree. The custody, care, and nurture of O.H. did reside at all times in her parenther father, Brooks Harrison. Brooks stated that Melody now fulfills the role that his mother and aunt did during his work shifts, but the evidence hardly indicates that Brooks has simply abandoned O.H.'s care to Melody. Brooks testified that he picked O.H. up from school when he was not working, that he helped with homework, that he got the children ready for school, that he cooked for them, and that he took them to school. Brooks also testified that he went to O.H.'s activities when he was not at work, and that when he was at work, Melody and the children would sometimes bring him dinner and that he would talk to O.H. on the phone on the nights he was at work.
Heather further argues that she had been denied "quality" time with her daughter, but it is hardly Brooks's fault if Heather cannot make her visitation with O.H. "quality time." There was testimony from Brooks, Melody, and even Heather that Brooks allowed O.H. to spend extra time with Heather, especially when Heather's father was ill. In contrast, it was Heather who refused to work with Brooks during summer visitation to allow Brooks and his family to take a vacation together. Heather's "moral superiority" is not supported by the evidence.

Best Interests
Notwithstanding that the trial court did not find a material change in circumstances to justify changing custody, it nevertheless proceeded to examine the best interests of O.H., finding that she was doing well in Brooks's home, that she was established in Brooks's home, and that she enjoyed having a stepsister her age and a new half-brother. Our standard of review for change of custody is more stringent than for initial determinations of custody. This is for the express purpose of preventing disruption in children's lives and giving them a sense of stability, rather than having their world be in a constant *608 state of flux. There is nothing in O.H.'s life with Brooks that indicates that it is not in her best interest for custody to remain with Brooks, who has done nothing but provide a happy, stable life for O.H. This is indicated by the trial court's well-reasoned ruling from the bench, recited in full above. It found that O.H. was doing very well in Brooks's home, and did not see any reason to "take a chance with a change in the custody now that we're settled in." Therefore, even if the evidence had been considered to be a material change in circumstances, which it was not, the trial court, as evidenced by its comments and its order, did not find that it would be in the best interest of the child to change custody to Heather. It is not this court's job to retry this case or to substitute our opinion for that of the trial judge.
In the order dismissing Heather's petition to modify the decree, the trial court found that Heather "has failed to meet her burden of proof in establishing that there has been a material change of circumstances since the entry of the decree of divorce herein on February 24, 2004, and that it would be in the best interest of the child to modify said decree." The trial court therefore thoroughly addressed both prongs: (1) material change of circumstances; and (2) best interest of the child.
As appellate judges, we are permitted to review, under appropriate standards, but not retry, cases that come before us. We do not make findings of fact. We do not determine the credibility of witnesses. Such findings and determinations are rightly made by our trial courts. Our standard of review requires that this case be affirmed.
Affirmed.
PITTMAN, C.J., GLADWIN and VAUGHT, JJ., agree.
ROBBINS, J., concurs.
HART, GRIFFEN, HEFFLEY, and BAKER, JJ., dissent.
JOHN B. ROBBINS, Judge concurring.
I concur with the majority's decision to grant rehearing and affirm the trial court's custody determination. I write separately to briefly address the appellant's "change-of-circumstances argument" and to respond to some of the arguments made in two of the dissenting opinions.
The first issue raised by appellant on appeal is whether the trial court erred in holding that appellant had not met her threshold burden of proving that a material change of circumstances had occurred since custody was originally placed with appellee. Appellant points to the alternate basis for revisiting the custody issue, i.e., "when there is a showing of facts affecting the best interests of the children that were either not presented to the chancellor or were not known by the chancellor at the time the original custody order was entered." Mason v. Mason, 82 Ark.App. 133, 111 S.W.3d 855 (2003). This alternative to the general proposition that there must be a change of circumstances is familiar more because of its mention than its application. The supreme court has not had occasion to instruct as to whether such a fact "unknown to the court" must be a circumstance that continues to exist, e.g., the prevailing custodial parent was addicted to drugs and this fact was unknown to the court at the time custody was last decided and such parent continues to be so addicted when the petition for change of custody is heard; or, as in the instant case, the circumstance of appellee dating a girlfriend while the divorce action was pending is no longer a circumstance, inasmuch as appellee is no longer dating that person and has now married another woman. However, whether the trial court was correct *609 on this issue is moot, because the trial court crossed the threshold and addressed the best interest of the child, concluding that it was not in the best interest of the child to change custody to appellant. Because that determination was not clearly erroneous, I concur to affirm.
Two of the dissenting judges criticize our court's view that the judges who conference a petition for rehearing may consider any issue that was properly raised before the original division. This matter was discussed at considerable length on September 14, 2004, and was adopted as an internal procedural rule by a seven to four vote of eleven of our twelve judges. One of these judges was absent during the discussion and vote, and we will never know whether his input, had he been in attendance, would have persuaded any of the seven judges who voted for the procedure to have voted differently. As to the other judge, she did participate in the September 14, 2004 conference and she voted for adoption of this procedural rule about which she now complains. It appears she has changed her mind, which brings me to the wisdom of our internal procedure now being maligned.
There is a significant difference between the restriction placed on attorneys who file petitions for rehearing pursuant to Ark. Sup.Ct. Rule 2-3(g) (2007), i.e., not to reargue what has already been argued in their appellate briefs, and the right of an appellate judge to change his or her vote on the disposition of an appeal prior to issuance of the court's mandate and the court's decision becoming final. Our internal procedural rule simply recognizes as a right what a conscientious appellate judge should consider a duty. How is justice served by our court self-imposing a restriction on our ability to correct a bad decision before it becomes final? A vote on a case that, upon reflection, is believed to be wrong ought to be corrected provided that it can be done before issuance of the mandate and the attendant state of finality sets in. Surely, the dissenting judges do not believe that a decision of an appellate court is entitled to stare decisis or law-of-the-case recognition before the court's mandate issues. If such is the case, we waste effort and paper in having our clerk issue mandates.
JOSEPHINE LINKER HART, Judge dissenting.
I agree with Judge Baker and Judge Griffen but write separately to add an additional point. It is obvious to me that the insertion of Brooks's new wife Amber constitutes a material change of circumstances. In Alphin v. Alphin, 364 Ark. 332, 219 S.W.3d 160 (2005), a change of live-in adult authority figures in a child's residence was held to not only constitute a material change of circumstances, but also the grounds for a change of custody. I am unable to understand why it is not self-evident to the majority that the introduction of a de facto new parent into O.H.'s life is not sufficient to warrant consideration anew of the custodial placement of the minor child. Incredibly, they suggest that a change in Brooks's work shift would be more significant than a change in "the people helping him." This is remarkable because this "help" routinely lasts for more than twenty-four hours at a time while Brooks is totally absent from the household. That the majority would suggest that it is not a material change in circumstances that there is a new adult living with the minor child in the household is troubling. Hardly a week goes by in this court when we are not asked to review a case involving sexual or physical abuse by a step-parent or live-in paramour. After today, it will not matter who the new live-in is so long as the custodial *610 parent shows up on occasion at the child's residence.
I also find it disturbing that the majority would berate an appellant, stating that Heather's argument was "somewhat hypocritical" because she had enlisted her parents to pick-up O.H. after school and care for her for a little over an hour while she completes her eight-hour work day. I believe that they are being deliberately obtuse in not recognizing that there is a substantial difference between an hour of after-school care with grandparents and abandoning a child for an entire twenty-four hour period with an unrelated adult.
Finally, I note that the trial judge made moral turpitude, defined by having a sexual relationship outside of marriage, a principle criteria for awarding custody to the father, yet the unrelated adult that the father has chosen to insert into the life of his young child is a woman who has conceived not one, but two children outside of wedlock. I refuse to speculate, under the standard of behavior the trial judgeand the majorityprescribes for the natural mother, whether a marriage ceremony would be sufficient to elevate Amber to a position where she would be "morally fit" to raise O.H. I only know that the law requires that we apply this standard equally. The majority has clearly erred in not treating O.H.'s parents equally.
GRIFFEN, HEFFLEY, and BAKER, JJ., join.
WENDELL L. GRIFFEN, Judge, dissenting.
Possibly unknown to anyone outside of the Arkansas Court of Appeals (including our supreme court), this court has an internal rule that seriously impacts the doctrines of stare decisis and law of the case. Said rule provides in relevant part:
Petitions for rehearing are considered at the Tuesday morning conference of the whole court, but only the judges in the original division and those in the prospective en banc group may ask for a vote on the question. Rehearing is automatically denied unless one of the judges in the en banc group asks for a vote.... Although counsel filing petitions for rehearing are subject to the restrictions of Rule 2-3(g) of the Rules of the Supreme Court, the judges who conference a petition for rehearing may consider any issue that was properly raised before the original division.

Ark. Ct.App. Internal R. 20 (emphasis added). Rule 2-3(g) of the Rules of the Supreme Court provides:
The petition for rehearing should be used to call attention to specific errors of law or fact which the opinion is thought to contain. Counsel are expected to argue the case fully in the original briefs, and the brief on rehearing is not intended to afford an opportunity for a mere repetition of the argument already considered by the Court.
The proper use of petitions for rehearing is to correct factual or legal errors in a judicial opinion. They are not intended to present arguments that are merely repetitious of those already considered by the court; such petitions that do so are ordinarily denied without comment. Butler Mfg. Co. v. Hughes, 292 Ark. 198, 731 S.W.2d 214 (1987); Shamlin v. State, 23 Ark.App. 39, 743 S.W.2d 1 (1988).
This appeal was originally considered by three judges. At least one member of the original panel did not agree on the outcome. The appeal was then considered by three more members of our court resulting in a 3-3 tie that required a third panel and conference. Finally, we decided the appeal in the nine judge arrangement, which we term "super en banc," and Judge Baker *611 authored a 5-4 majority opinion reversing the circuit court.
After the opinion was issued, Judge Miller, a member of the majority, left our court to join the federal judiciary. A petition for rehearing was filed, and Judge Miller was replaced with another member of the court whose view of this case differed from Judge Miller's. Today, the court grants the petition for rehearing and reverses the original disposition, but outside of the first paragraph, one would never know that we previously decided to reverse and remand. Rather, the majority affirms the circuit court, but not necessarily for any reason argued in the petition for rehearing.
Arkansas appellate courts have long adhered to the doctrines of stare decisis and law of the case. The doctrine of the law of the case prohibits a court from reconsidering issues of law and fact that have already been decided in a prior appeal. Byme, Inc. v. Ivy, 367 Ark. 451, 241 S.W.3d 229 (2006). A court is to follow the law of the case, even if it opines that the previous appeal was incorrectly decided. See Potter v. Easley, 288 Ark. 133, 703 S.W.2d 442 (1986). Further, there is a strong presumption of the validity of prior decision, and this court, as a matter of public policy, upholds prior decisions unless great injury or injustice would result. See Cochran v. Bentley, 369 Ark. 159, 251 S.W.3d 253 (2007). The policy behind stare decisis is to lend predictability and stability to the law. See id. In matters of practice, adherence by a court to its own decisions is necessary and proper for the regularity and uniformity of practice, and that litigants may know with certainty the rules by which they must be governed in the conducting of their cases. See id. Precedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable. See id.
The rehearing process widened by the instant decision, however, ignores, if not blatantly violates, these doctrines. If the law in a particular case is only what the majority holds at the instant the case is decided, then a petition for rehearing may be granted anytime there is a personnel change, increasing the chances of that petition being granted from a possibility to a probability, as incoming judges may take a different view of the case. This case is an example of how stare decisis and law of the case can be violated via a petition for rehearing. The legal community should be particularly mindful of this possibility, as four new judges will join this court on January 1, 2009. Judging from this case, no party will be able to rely on any closely-decided opinion issued by this court in November and December 2008, as the four new judges will have the power to reverse those decisions and render the previous deliberations moot merely because they will be new.
Under the doctrines of stare decisis and law of the case, judges should respect the decisions made by the court unless those decisions are reversed by a higher court, properly overruled by this court in a future case, or superceded by an act of the General Assembly. Petitions for rehearing should not operate as vehicles for re-appealing issues already decided. Yet, that is exactly what has occurred in this case. One party originally lost the appeal, filed a petition for rehearing, and has now prevailednot due to any error in the original opinionbut in what was simply a second bite at the apple.
This case, as well as Internal Rule 20, also calls into question the applicable standard of review for a petition for rehearing. The majority relies on the fact that a mandate is not issued until a case becomes final under Rule 5-3 of the Rules of the Supreme Court. The issuance of the mandate, *612 however, has no bearing of the validity of the opinion itself. A "mandate" is the official notice of the action of the appellate court, directed to the court or administrative agency below, advising of the action taken by the appellate court, and directing the lower court or agency to have the appellate court's judgment duly recognized, obeyed, and executed. Johnson v. State, 366 Ark. 390, 235 S.W.3d 872 (2006); Singleton v. City of Pine Bluff, 102 Ark. App. 305, 285 S.W.3d 253 (2008).
When searching for precedent, the public relies on judicial opinions, not judicial mandates. The law in any given case is what is stated in the opinion. In contrast, the mandate merely orders the lower court to execute its instructions. When an appellate court issues an opinion, the public feels the legal effect of the decision immediately. Even when a decision is given prospective effect only, the decision applies to cases the day the decision is announced, not delayed until the Clerk issues the mandate. It necessarily follows that opinions have precedential value even before the mandate is issued. Those decisions are deserving of this court's legal recognition and respect. This is why petitions for rehearing are limited in scope.
As appellate judges, we recognize that we may make legal or factual errors. The rehearing process affords us the opportunity to correct those errors and reverse decisions accordingly if necessary. This process, however, should not grant leave to change an otherwise valid decision of this court, particularly when the only difference between the case as originally heard by the court and the case as heard on petition for rehearing is the makeup of the deciding panel. Doing so not only undermines the value of the original opinion, it undermines the reliance that the public has on the pronouncements of this court.
Whatever the terms "stare decisis," "law of the case," and "standard of review" mean, they should not turn on personnel changes, and litigants should be able to rely on those time-honored doctrines no matter who comes or goes on this court, or when judges come and go.
I respectfully dissent, and I am authorized to state that Judges HEFFLEY and BAKER join in this opinion.
BAKER, J., dissenting.
The majority opinion in the first case, Harrison v. Harrison, CA07-587, 2008 WL 943915 (Ark.App. April 9, 2008), was clearly not in error in any of the ways alleged by the majority in this case. The majority opinion concludes that the majority in the first case "failed to adhere to the well-settled standard of review in custody cases" and "speculated as to what testimony at the initial trial might have been and assumed custody was denied or awarded on a singular issue." This is simply untrue.
In Mason v. Mason, 82 Ark.App. 133, 111 S.W.3d 855 (2003), this court held that in order to avoid relitigation of factual issues already decided, courts will usually restrict evidence in a modification proceeding to facts arising since the prior order; the only other time a change is permissible is when there is a showing of facts affecting the best interest of the children that were either not presented to the trial judge or were not known by the trial judge at the time the original custody order was entered. (Emphasis added.) Here, there was a material fact that was not known to the trial court at the time the original custody order was entered. That undisputed fact was that Mr. Harrison sought custody of the parties' daughter on the basis that Ms. Harrison was involved in a sexual relationship, while at the same time *613 Mr. Harrison was participating in the same conduct. This court knows that because Mr. Harrison made the following admission in his testimony:
The situation with me getting custody of [O.H.] arose out of the fact that [appellant] was seeing someone else during the time that we were separated and prior to the divorce. In fact, I did the same thing. I don't believe I told that at the divorce hearing.... But, yeah, I would guess you're correct in saying that I asked the court to take custody away from Heather for the very same thing that I was doing at the time and continued to do afterward.
Moreover, the trial judge stated in his oral ruling:
First of all the Court's going to comment about the original decision in which the Defendant admitted that he was engaged himself in an adulterous relationship at the time of the divorce and that that information was withheld from the Court. The Court agrees with Plaintiff's contention that that cast the Defendant in a bad light with the Court, the Court feeling that not only is he a cheat, but he's a nefarious and devious cheat, and the Court recognizes that.
The trial court's observations and conclusions about Mr. Harrison were well taken and consistent with this court's previous admonitions that to reward such behavior is bad policy: "To this Court, it is bad policy to reward an adulterous, deceitful, nefarious, lying litigant." Graves v. Stevison, 81 Ark.App. 137, 141, 98 S.W.3d 848, 850 (2003) (referencing a mother who admitted the father she sued for paternity was not the true father of the child). The trial judge further stated that Mr. Harrison's character was questionable and that, while it did not know that its prior custody determination would have been different had the truth been known, "it well may be that the decision of the Court would have been different."[1] Contrary to the conclusion in the majority opinion in this case, the majority opinion in the previous case contained no mistake of law or fact.
In addition, our supreme court's clear and concise rule on rehearing is as follows:
The petition for rehearing should be used to call attention to specific errors of law or fact which the opinion is thought to contain. Counsel are expected to argue the case fully in the original briefs, and the brief on rehearing is not intended to afford an opportunity for a mere repetition of the argument already considered by the Court.

Ark. Sup.Ct. Rule 2-3(g) (2007) (emphasis added). A simple read of Rule 2-3 reveals that it was not designed to give litigants a second attempt at an appeal that has already been decided by nine members of this court, and a mere substitution of one judge on a panel should not affect the outcome of a case. In violation of Rule 2-3, the parties here have re-argued the *614 same issues already heard and decided by this court. Thus, rehearing is inappropriate and should be denied.[2]
Finally, I join Judge Griffen's dissent, but would add that this is the second time that a change in the judges on this court has resulted in a changed outcome in a case already decided by nine judges. See Economy Inn & Suites v. Jivan (Jivan I), CA06-158, 2006 WL 3505548 (Ark.App. Dec. 6, 2006) and Economy Inn & Suites v. Jivan (Jivan II), 97 Ark.App. 115, 253 S.W.3d 4 (2007). Our supreme court, after reviewing the result in Jivan II, reinstated the original result. See Jivan v. Economy Inn & Suites, 370 Ark. 414, 260 S.W.3d 281 (2007). Certainly, the bar should be aware that Rule 2-3, although applicable to them, does not, in the majority's view, apply to this court.
Judges HART, HEFFLEY, and GRIFFEN join this dissent.
NOTES
[1] In his dissent, Judge Griffen asserts that this decision "seriously impacts the doctrines of stare decisis and law of the case." He is incorrect. He labors under the false premise that the first opinion in this case was a final decision. Rule 5-3(a) of the Rules of the Supreme Court and Court of Appeals provides that the Clerk will issue a mandate when the decision becomes final, and that "[a] decision is not final until the time for filing of petition for rehearing . . . has expired or, in the event of the filing of such petition, until there has been a final disposition thereof." In this case, Brooks Harrison timely filed a petition for rehearing, and this opinion affirming the trial court's decision is the final disposition of that petition.
[2] We note that Judge Baker's dissent conveniently ignores this portion of the trial court's ruling. It is clear that the trial judge, while finding Brooks's behavior reprehensible, could not conclude that even had he known about it at the time of the divorce, he would have awarded custody of O.H. to Heather. Again, this court is only left to speculate as to other reasons, if any, that the trial court initially awarded custody to Brooks, as that hearing testimony is not before us. Unlike the dissent, we will not speculate as to what might have been. Specifically, our standard of review does not allow us to do this.
[1] Apparently, both the trial judge and the majority labor under the misconception that unless the trial judge can state definitively that a fact unknown to him would have resulted in a changed outcome, a material change in circumstances has not occurred. That is not the law.

Although I do not discuss this court's internal rule concerning rehearing in this dissent, I do criticize the majority's application of the rule in this case. I interpret our internal rule as being consistent with Rule 2-3(g) of the Rules of the Supreme Court. Rule 2-3(g) is the rule at issue when determining whether a case should be reheard. Once a decision to rehear a case is reached in accordance with Rule 2-3(g), I agree that our internal rule provides that the judges who conference the case on rehearing may consider any issue properly raised before the original division. Nonetheless, mere re-argument is not an appropriate basis to grant for rehearing under either rule.
[2] Although I do not discuss this court's internal rule concerning rehearing in this dissent, I do criticize the majority's application of the rule in this case. I interpret our internal rule as being consistent with Rule 2-3(g) of the Rules of the Supreme Court. Rule 2-3(g) is the rule at issue when determining whether a case should be reheard. Once a decision to rehear a case is reached in accordance with Rule 2-3(g), I agree that our internal rule provides that the judges who conference the case on rehearing may consider any issue properly raised before the original division. Nonetheless, mere re-argument is not an appropriate basis to grant for rehearing under either rule.